UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CIVIL ACTION NUMBER 5:24-CV-70-LLK

LISA J.[1]                                                          PLAINTIFF

v.

FRANK BISIGNANO,
Commissioner of Social Security                                    DEFENDANT

MEMORANDUM OPINION AND ORDER

Plaintiff filed a Complaint seeking judicial review, pursuant to 42 U.S.C. § 405(g), of the Final Decision of the Commissioner denying her claim for Disability Insurance Benefits (DIB) under Title II of the Social Security Act. [DN 1]. Plaintiff's Fact and Law Summary is DN 14, Plaintiff's responsive Fact and Law Summary is DN 16, and Plaintiff's Reply Brief is DN 17. The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge to determine this case, with any subsequent appeal to be filed directly to the United States Court of Appeals for the Sixth Circuit [DN 8]. The matter is now ripe for determination.

For the reasons set forth below, the Court finds that this matter should be remanded for further proceedings pursuant to Sentence Six of 42 U.S.C. § 405(g).

## I. BACKGROUND

**Administrative History**. Plaintiff filed her Title II DIB application on June 18, 2021, [DN 7] at 1535, alleging disability beginning February 8, 2019,[2] as a result of rheumatoid arthritis, fibromyalgia, bipolar disorder, depression, high blood pressure, blood clots with history of deep vein thrombosis, pulmonary embolism, history of left ankle synovectomy, and all over swelling.

---

[1] Pursuant to General Order 22-05, Plaintiff's name in this matter is shortened to first name and last initial.
[2] After some discussion at the hearing regarding Plaintiff's last substantial gainful activity ("SGA") in 2020, Plaintiff amended her alleged onset date from February 8, 2019, to March 24, 2020. [DN 7] at 1381.

[DN 7] at 1570. She was 51 years old at the time of filing. Plaintiff has a college degree and worked as an ultrasound technician. [DN] 7 at 1571-72. Her claim was denied initially on August 25, 2021, and upon reconsideration on June 6, 2022. Plaintiff timely requested a hearing before an ALJ. Due to COVID-19, ALJ Marci Eaton conducted the hearing via online video on December 20, 2022. Plaintiff was represented by Attorney Donna Thornton Green; Millicent Polivick of Mrs. Green's office represented Plaintiff at the hearing. Sharon Moncus, and impartial vocational expert, also provided testimony at the hearing. On March 15, 2023, the ALJ issued an unfavorable Decision, [DN 7] at 187-199, and found Plaintiff not disabled.

Plaintiff timely requested review of the ALJ's Decision by the Appeals Council, and on May 11, 2023, the Appeals Council granted her extensions of time in which to file additional evidence. [DN 7] at 173. On February 21, 2024, the Appeals Council denied Plaintiff's request for review. In addressing the additional medical evidence Plaintiff submitted for review, the Appeals Council found that "this evidence does not show a reasonable probability that it would change the outcome of the decision. We did not exhibit this evidence." [DN 7] at 6. In addressing the new evidence Plaintiff submitted[3]—medical records from Baptist Health, Paducah Rheumatology, and

---

[3] Submitted to the Appeals Council but addressed separately from the rest were 250 pages of hospital records from Baptist Health dated March 6 through March 16, 2023. These records cover Plaintiff's partial mastectomy and sentinel node biopsy. Consistent with Plaintiff's hearing testimony, medical records indicate that she had gone a period of time without health insurance and had been unable to pay out-of-pocket for routine medical care. [DN 7] at 1400; 1773-75. Once she was approved for Medicaid, Plaintiff underwent a mammogram, the results of which necessitated surgical intervention on March 16, 2023 (the day after the ALJ's unfavorable Decision). The Appeals Council addressed these Baptist Health records separately from the rest, noting, "We find this evidence does not show a reasonable probability that it would change the outcome of the decision. We did not exhibit this evidence." The Court surmises that the Appeals Council dealt with these records separately because they cover a time period between the hearing and the date of the ALJ's Decision. Evidence is considered new, for purposes of a sentence six remand, "only if it was 'not in existence or available to the claimant at the time of the administrative proceeding.'" *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001) (quoting *Sullivan v. Finkelstein*, 496 U.S. 617, 626 (1990)). There appears to be some disagreement within this circuit about what constitutes the "administrative proceeding," as the Sixth Circuit has used the terms "administrative proceeding" and "hearing" interchangeably at times. See e.g., *Ferguson v. Comm'r of Soc. Sec.*, 628 F.3d 269, 276 (6th Cir. 2010); *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). In this case, the Court will utilize the date of the administrative hearing—December 22, 2022—and determine whether the medical records existed on that date for purposes of "new" analysis. Accordingly, the Baptist Health hospital records submitted to the Appeals Council from Plaintiff's March 2023 mastectomy procedure will be included with the other "new" Baptist Health hospital records submitted for the first time to the Appeals Council.

Baptist Health Medical Group Podiatry dated March 27, 2023, to November 16, 2023—the Appeals Council found as follows:

> The Administrative Law Judge decided your case through March 15, 2023. This additional evidence does not relate to the period at issue. Therefore, it does not affect the decision about whether you were disabled beginning on or before March 15, 2023.

[DN 7] at 6.

As a result of the Appeals Council denial, the ALJ's Decision became the final Decision of the Commissioner and subject to judicial review in this Court. 42 U.S.C. §§ 405(g) and (h); 20 C.F.R. § 422.210(a).

**The ALJ's Decision**. The ALJ's Decision denying Plaintiff's claim for DIB, [DN 7] at 187-199, was based on the five-step sequential evaluation process which applies in all Social Security disability cases.

First, the ALJ found that Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2025, and that she has not engaged in substantial gainful activity since March 24, 2020, the amended alleged onset date (20 CFR 404.1571 *et seq*.). [DN 7] at 190.

Second, the ALJ found that Plaintiff has the following severe impairments: rheumatoid arthritis without rheumatoid factor; fibromyalgia; obesity; migraine disorder; bipolar disorder; and anxiety disorder (20 CFR 404.1520(c)). *Id*.

Third, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526). *Id*.

As in any case the proceeds beyond Step 3, the ALJ determined Plaintiff's residual functional capacity ("RFC"), which is defined as "the most you can still do despite your

limitations." 20 C.F.R. § 404.1545(a)(1). In making an RFC determination, the ALJ considers the record in its entirety. 20 C.F.R. § 404.1545(a)(3). The ALJ found that, notwithstanding her impairments, Plaintiff can perform a limited range of light work:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except the claimant may frequently climb ramps or stairs but should avoid climbing ladders, ropes, or scaffolds. She can frequently stoop, kneel, crouch, or crawl. She should avoid reaching overhead with her bilateral upper extremities. She should avoid concentrated exposure to extreme cold, extreme hot, wetness, humidity, vibration, or unprotected heights and moving machinery. She can understand and remember simple and detailed (not complex) instructions. She can sustain attention, concentration, effort, and pace for simple and detailed (not complex) tasks requiring some independent judgment and involving some variations over two-hour work segments over an 8 hour workday with normal breaks. She can interact with coworkers, supervisors, and the public on an occasional basis. She can adapt to situational conditions and normal changes in routine and hazards in the workplace.

[DN 7] at 192.

Fourth, the ALJ found that Plaintiff is unable to perform any past relevant work (20 CFR 404.1565). [DN 7] at 197.

Fifth, the ALJ found that Plaintiff was born on November 3, 1969, and was 49 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date (20 CFR 404.1563); that she has at least a high school education (20 CFR 404.1564); that transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled." Whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2); and after considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569a). [DN 7] at 197.

4

## II. LAW & ANALYSIS

**Standard of review**. This Court's task in reviewing the ALJ's findings is limited to determining whether they are supported by substantial evidence and made pursuant to proper legal standards. *Rogers v. Comm'r of Soc. Sec*., 486 F.3d 234, 241 (6th Cir. 2007). Substantial evidence is "more than a scintilla of evidence but less than a preponderance." *McGlothin v. Comm'r of Soc. Sec*., 299 F.App'x 516, 522 (6th Cir. 2008). The Court may not "try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." *Cutlip v. Sec'y of Health & Hum. Servs*., 25 F.3d 284, 296 (6th Cir. 1994).

The substantial evidence standard presupposes that there is a "zone of choice within which the decisionmakers can go either way, without interference by the courts." *Blakely v. Comm'r of Soc. Sec*., 581 F.3d 399, 405 (6th Cir. 2009). A reviewing court decides only whether substantial evidence supports the decision. *Id*. If it does, the court affirms the decision even in the face of substantial evidence supporting the opposite conclusion. *Id*.

Because Plaintiff filed her DIB claim in April of 2021, the new rules for weighing medical opinions apply. See 20 C.F.R. § 404.1520c ("For claims filed … on or after March 27, 2017, the rules in this section apply.") Under the new rules, special evidentiary weight is no longer given to the opinion of a treating medical source. 20 C.F.R. § 404.1520c(a). Instead, in determining the persuasiveness of a medical opinion, an ALJ is to consider "supportability, consistency, relationship [with the claimant], specialization, and other factors." 20 C.F.R. § 404.1520c(c)(1)-(5). However, the ALJ need only explain how s/he considered the supportability and consistency factors, which are the two most important factors in determining the persuasiveness of a medical opinion. 20 C.F.R. § 1520c(b)(2). Without the treating physician rule, the applicable regulations allow the ALJ "to evaluate the persuasiveness of submitted medical opinions, with particular focus

on their supportability and consistency." *Sallaz v. Comm'r of Soc. Sec.*, No. 23-3825, 2024 WL 2955645 at *6 (6th Cir. June 12, 2024).

**Relief sought by Plaintiff**. Plaintiff's Fact and Law Summary indicates that "Plaintiff specifically disputes findings numbered 3, 5, 10, 11, conceding the remainder." [DN 14] at 1. Finding 3 enumerates the ALJ's Step Two findings of Plaintiff's severe medically determinable impairments; Finding 5 is the ALJ's residual functional capacity finding; Finding 10 is the ALJ's Step Five finding that though she cannot perform her past relevant work, Plaintiff remains capable of performing jobs that exist in significant numbers in the national economy; and Finding 11 is the ALJ's finding that Plaintiff "has not been under a disability, as defined in the Social Security Act, from March 24, 2020, through the date of [the] decision" of March 15, 2023. [DN 7] at 199.

Plaintiff argues that the ALJ erred in finding Plaintiff's rheumatoid arthritis ("RA") to be a severe impairment at Step Two, yet subsequently failing to mention RA in the body of her decision; for this and other reasons Plaintiff argues that the ALJ's analysis of her RA and fibromyalgia are not well reasoned or supported by the total evidence of record.[4] [DN 14] at 2. Next the Plaintiff argues that the ALJ's physical RFC is flawed, as the ALJ rejected the physical limitations assigned by her treating rheumatoid specialist physician, Dr. Phillips; had Dr. Phillips' less-than-light (and

---

[4] Plaintiff indicated during the hearing that her primary problematic physical condition and symptoms were from rheumatoid arthritis. Hearing transcript, [DN 7] at 1386. The ALJ's analysis of this condition and its symptoms is puzzling. After finding rheumatoid arthritis to be a severe impairment at Step Two, the ALJ's Decision makes only one reference to rheumatoid arthritis, and that is when quoting Dr. Phillips (Plaintiff's long-time treating rheumatologist) as opining "in December 2020 that the claimant was disabled based on severe rheumatoid arthritis." [DN 7] at 195. Certainly, the ALJ was not required to consider Dr. Phillips's statement that Plaintiff "was disabled" because it is not a medical opinion, but instead is a statement on an issue "reserved to the Commissioner." 20 C.F.R. §§ 404.1520b(c)(3)(i). And the mere diagnosis of a condition says nothing about its severity. Nonetheless, Consultative Examiner Dr. Vacek acknowledged Plaintiff's rheumatoid arthritis diagnosis and the fact that it is a progressive disease. [DN 7] at 2018. Dr. Vacek's findings were considered persuasive by the ALJ, but certain unspecified "conclusory opinions" contained within his report were rejected as not supported. The ALJ's discussion of the December 28, 2021, findings of state agency medical consultant Dr. Stephen J. Spanbauer is equally evasive of the use of the words "rheumatoid arthritis." Dr. Spanbauer made specific observations, including that "RA is a systemic auto-immune disease that gives rise to more than just joint problems." [DN 7] at 1428. Because the case is being remanded under Sentence Six, the Court will not further address Plaintiff's critique regarding the ALJ's treatment of her rheumatoid arthritis symptoms and overall failure to acknowledge the diagnosis.

less-than-sedentary) work limitations been accepted by the ALJ, Plaintiff's case is an automatic pay under Grid Rule 201.14. *Id*. Finally, Plaintiff argues that new and material evidence supports remand, as "there is a reasonable probability that the additional evidence would change the outcome of the decision." [DN 14] at 6.

In response, the Commissioner argues that the ALJ reasonably considered the record as a whole, including the medical opinion evidence, in formulating Plaintiff's physical RFC. [DN 16] at 4. Secondly, the Commissioner argues that the additional evidence submitted to the Appeals Council does not warrant remand under sentence six of 42 U.S.C. § 405(g), and that Plaintiff's Brief fails to cite the proper standard for such a remand.

Because the Court agrees that this matter should be remanded for further proceedings pursuant to Sentence Six of 42 U.S.C. § 405(g), it does not consider Plaintiff's other arguments.

## **Request for a Sentence Six Remand**

As a preliminary matter, this Court construes Plaintiff's argument pertaining to "new and material evidence" to be a request for Sentence Six remand. The Commissioner is correct that Plaintiff's brief does not specifically reference Sentence Six of 42 U.S.C. § 405(g) as the basis for remand. Instead, she argues that "New and Material Evidence Supports Remand," cites to the legal standard for Appeals Council review of additional evidence, and faults the Appeals Council for declining review on the basis of that evidence. [DN 14] at 6. Pursuant to 42 U.S.C. § 405(g), a district court is granted jurisdiction to review only the "final decision of the Commissioner of Social Security," not an Appeals Council determination. *Amber R. v. Comm'r of Soc. Sec. Admin.*, No. 3:21-CV-204, 2022 WL 3966676, at *2 (S.D. Ohio Aug. 31, 2022). The ALJ's Decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review, 42 U.S.C. § 405(g); 20 C.F.R. § 404.981; *Cline v. Comm'r of Soc. Sec.*, 96 F.3d

146, 148 (6th Cir. 1996). And while generally the party seeking a Sentence Six remand bears the burden of showing that remand is appropriate, *Oliver v. Sec'y of HHS*, 804 F.2d 964, 966 (6th Cir. 1986), the plain language of 42 U.S.C. § 405(g) gives this Court authority to grant a Sentence Six remand *sua sponte*, "at any time" where it finds the post-decision evidence is both new and material, and that good cause can be shown for its omission from the original record.

### Sentence Six Remand Framework

When determining whether the ALJ's decision is supported by substantial evidence, a reviewing Court is limited to reviewing the record that was before the ALJ. *Wyatt v. Sec'y of HHS*, 974 F.2d 680, 685 (6th Cir. 1992); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 478 (6th Cir. 2003). Where substantial evidence supports an ALJ's decision, but new and material evidence that was not before the ALJ could affect the claim's disposition, remand might be justified pursuant to Sentence Six of 42 U.S.C. § 405(g). In relevant part, Sentence Six reads:

> The court may … at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding[.]

The Sixth Circuit has interpreted this statute as creating the following requirements for a Sentence Six remand to consider new evidence: (1) there is new evidence that was unavailable at the time the ALJ issued her written decision; (2) the new evidence is material; that is, there is a "reasonable probability that the Commissioner would have reached a different disposition of the disability claim if presented with the new evidence," *Ferguson v. Comm'r of Soc. Sec.*, 628 F.3d 269, 276 (6th Cir. 2010); and (3) the claimant shows "good cause for the failure to incorporate such evidence into the record in a prior proceeding." Sentence Six, 42 U.S.C. § 405(g). If a court remands a claim under Sentence Six, the court "does not affirm, reverse, or modify the Commissioner's decision,"

8

rather, it remands for further administrative proceedings without ruling on the merits." *Melkonyan v. Sullivan*, 501 U.S. 89, 98 (1991).

**Relevant evidence before the ALJ**. Evidence presented at the hearing and in the records before the ALJ included Plaintiff's testimony that the primary physical problems preventing her from working stem from rheumatoid arthritis and fibromyalgia.[5] [DN 7] at 1386. She testified that she had been treated by Rheumatologist Dr. Christopher Phillips for these conditions for years, that the symptoms from each came in unpredictable flares, and that she had problems in the joints of her ankles, feet, shoulders, hands, knees and neck. [DN 7] at 1392. Plaintiff's hearing testimony on her RA included the following:

> I was diagnosed, you know, about 20 years ago with rheumatoid arthritis. I have problems that's, of course, has gotten worse, my neck being one, my shoulders, elbows and my hands are starting to swell really bad. My ankles and feet, I've had surgery, continuous pain and difficulty. Like, I can't do things now that I used to do, walk steps.… My flares, it's—they kind of go—I may have a flare a couple times a month. When they come up, it's like a flu, like having the flu. Primarily, I have to sleep. I have headaches and just basically hurt from, you know, neck down. I have to get cortisone injections at times in my joints. I have – I take muscle relaxers or just rest, basically.

[DN 7] at 1392-93.

Plaintiff further testified that she has problems with swelling in both ankles and feet, in her left knee, both shoulders and hands, and arthritis in her neck (that required cervical fusion). She testified that she can walk about 50 yards to and from her mailbox, stand 40-45 minutes before

---

[5] The ALJ heard a brief opening statement/summary from Plaintiff's counsel: Ms. Jameson is currently 53 years of age. Her primary impairments are rheumatoid arthritis, fibromyalgia. She also has a history of bipolar disorder, and she suffers from migraines. Her treating physician is the rheumatologist, Dr. Christopher Phillips. And he has assumed a lot of her care and monitors her conditions, especially the RA and fibromyalgia. Since she stopped working, she's not had any insurance and she's had to pay out of pocket for her care, which has been particularly difficult for her with her medications. Dr. Phillips' records document her symptoms were affecting her job performance as early as September of 2018. There are multiple mentions of his supporting her disability claim in his notes. In 2018, she was having difficulty elevating her arms overhead and that's also mentioned in his records as well as documentation of ankle pain, puffy hands and stiffness in her hands, right shoulder pain and swelling in the right shoulder. And then, fatigue, stiffness, multiple joint injections in Dr. Phillips' office. [DN 7] at 1386-87.

needing to rest. When she gets out of bed, it takes an hour or two to work the stiffness out. She must change positions often, and often spends a majority of her day elevating her feet in the recliner because of swelling in her feet and ankles. She has difficulty using her hands and fingers because they are swollen, stiff and weak, and problems lifting because of her shoulder joints and neck fusion. [DN 7] at 1393-1399.

The records from Dr. Phillips support Plaintiff's testimony regarding her symptoms, including: a prior synovectomy of her left ankle and prior cervical fusion; various medications and injections prescribed to try to manage her unpredictable RA symptoms; multiple in-office arthrocentesis procedures to drain fluid from and inject steroids into her shoulder and ankle joints as early as 2016; the difficulties that her RA symptoms were causing in her ability to work/walk/perform activities of daily living; the increasing difficulty RA was causing in her feet and ankles which (according to Dr. Phillips) might eventually require surgical intervention; the waxing and waning of rheumatoid arthritis and fibromyalgia symptoms and the attempts to properly medicate their moving target symptoms; and the difficulties Plaintiff encountered in paying for office visits and medications once she could no longer work and no longer had health insurance coverage.

Before the ALJ was Dr. Phillips's circle-the-answer/check-the-box Attending Physician Restrictions form dated September 14, 2021, [DN 7] at 1712, which limits Plaintiff to sitting 2 hours, standing 2 hours, and walking ¼ hour continuously, or to 2 hours of sit/stand option in an 8 hour workday. He noted that she would need to frequently rest/recline or lie down with legs elevated due to pain, fatigue or other symptoms; her lift and carry limits would be 1-5 pounds frequently, 6-20 pounds occasionally, and rarely or no lifting/carrying of 21-50 pounds. He assigned limitations of occasionally using hands/arms for reaching, handling and fingering. With

regard to her lower extremities, he noted that she could not use her feet for repetitive movements and that she should rarely or never climb, balance, stoop, crouch, kneel, or crawl. She should also avoid heights, moving machinery, and respiratory irritants. Finally, he noted that these restrictions would be expected to last twelve continuous months, would likely result in her absence from work four or more days per month, and that the assessment was based upon diagnosis of RA (rheumatoid arthritis). *Id*. The ALJ rejected these treating source restrictions as unpersuasive because "the treatment records do not support the extent of the limitations on a regular and consistent basis." [DN 7] at 195.

Also before the ALJ were the notes of consultative examining physician Dr. Vacek whose RA related diagnoses included, "The patient has rheumatoid arthritiss [sic] which is typically a progressive disease. She reportedly may have ankle surgery scheduled which could improve her symptoms…. Her other medical comorbidities are not significantly disabling." [DN 7] at 2018. Dr. Vacek limited Plaintiff to standing for 45 minutes, walking for 45 minutes, and indefinite sitting time. He opined she could lift 5 pounds for 5 feet without difficulty and handle objects in both hands with good motor coordination, but with some limitation of motion in her neck. The ALJ rejected his opinions as "conclusory" and "not supported or consistent with the totality of the medical records."

Upon reconsideration, the state agency reviewing internal medicine specialist Dr. Stephen Spanbauer assigned limitations consistent with Plaintiff's ability to work at the light exertional level but with some climbing/positional/environmental and hazards limitations. He noted that on some examinations, Plaintiff had marked synovitis of both ankles and mild synovitis in hands, along with back pain and joint swelling, and limited range of motion in the cervical spine. [DN 7] at 196. Included in his findings and RFC explanation was the statement that "RA is a systemic

auto-immune disease that gives rise to more than just joint problems. It can be associated with significant fatigue, malaise and overall body stiffness, especially first thing in the morning." [DN 7] at 1428. The ALJ was only somewhat persuaded by this opinion.

**Does the additional evidence submitted to the Appeals Council warrant Sentence Six Remand?** Following the ALJ's unfavorable Decision, Plaintiff presented additional evidence to be considered by the Appeals Council. At issue is whether the additional medical evidence meets the necessary criteria to justify a Sentence Six remand to the Commissioner. For purposes of review, the Court categorized the additional evidence submitted to the Appeals Council as follows: 1) April 12, 2023, letter and continued treatment records/diagnostic studies from Dr. Phillips, [DN 7] at 178; 164-183; 2) Treatment records/diagnostic studies from podiatric specialist Dr. Chad Bassi, [DN 7] at (8/15/2023)123-162 and 1109-1125, (9/19/2023) at 66-122; (10/2/23) orders at 32-65, and (surgical follow-up) at 12-31, 210-265; and 3) Baptist Health surgical records/diagnostic studies from a partial mastectomy by Dr. April Jackson in March of 2023, [DN 7] at 1130-1380, and left ankle/foot fusion by Dr. Chad Bassi in October of 2023, [DN 7] at 340-2204.

**1. April 12, 2023, letter from Dr. Phillips; Continuing treatment records/diagnostic studies**. Dr. Phillips' medical records that were before the ALJ showed evidence of flaring rheumatoid arthritis requiring joint draining and steroid injections of the ankles from as early as 2016,[6] pain and symptoms related to RA that were affecting Plaintiff's job performance as early as 2018,[7] and medicine changes required by both ineffectiveness and eventually Plaintiff's inability to pay due to lack of insurance.[8] She continued working until March of 2020 when she could no longer walk into the hospital to perform her job.[9] Throughout his records, in addition to

---

[6] Dr. Phillips March 20, 2018, medical record [DN 7] at 1649.
[7] Dr. Phillips September 6, 2018, medical record. [DN 7] at 1661.
[8] Dr. Phillips July 2019, medical record [DN 7] at
[9] Hearing transcript, [DN 7] at 1389-1390.

documenting her myriad RA symptoms, Dr. Phillips expressed his "support for" Plaintiff's seeking disability. Dr. Phillips' March 27, 2023, office visit record indicates his disappointment with the unfavorable disability Decision, and also includes a notation: "Brings the xrays we ordered in winter, we hadn't seen them, her TN joints are collapsed."[10] [DN 7] at 179. Upon review of the xrays, Dr. Phillips refers Plaintiff to Dr. Arjun Srinath, an orthopedic foot surgeon at the University of Kentucky. In addition, Dr. Phillips' clinical notes from the March 27, 2023, office visit include these clinical findings:

> Lisa has advanced collapse of the upper tarsals, and has chronic rheumatoid involvement. She is maximally medicated on Actemra and methotrexate and probably at this point damage is displacing inflammation as the pain driver. I don't think switching antirheumatic's [sic] would be further beneficial at this point. There is some background fibromyalgia, significant disability related to her chronic illness, and I don't see a way that she could gainfully maintain employment with these various things, most notably her arthritis. I fully support disability on this basis.

[DN 7] at 182.

These same five sentences were put into letter form by Dr. Phillips dated April 12, 2023. This letter from Dr. Phillips (and the medical record from which it is taken) is new. It is new because it was filed for the first time before the Appeals Council and was "not in existence or available to the claimant at the time of the administrative proceeding." *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001) (quoting *Sullivan v. Finkelstein*, 496 U.S. 617, 626 (1990)).

Whether good cause exists as to why this evidence was not presented is a harder question. This letter is not technically a medical record generated in the usual course of continued medical care. The letter is only five sentences long, and the first three and a half contain medical diagnoses, medication notes, an opinion regarding the source of pain, and an opinion that further medication

---

[10] This referenced "winter xray" (from late 2022/early 2023) of Plaintiff's feet is not included in the administrative record.

will not be beneficial. Also contained in the letter are one-and-a-half sentences of Dr. Phillips' opinions/statements on issues reserved strictly to the Commissioner regarding the ultimate determination of disability. Generally, medical records can meet the "good cause" threshold when they are generated as part of continued medical care and not merely to rebut an unfavorable disability ruling. See *Koulizos v. Sec'y of HHS*, 802 F.2d 458 (6th Cir. 1986).

While this letter does appear to be generated to rebut an unfavorable disability ruling, the first 3.5 sentences contain helpful and pertinent information regarding Plaintiff's long-standing RA condition. The x-ray "ordered in winter" showed collapsed TN joints was objective diagnostic evidence generated *before* the ALJ's unfavorable Decision of March 15, 2023. The March 27, 2023, medical record and April 12, 2023, letter came into existence after the unfavorable decision. However, the x-ray upon which they are based is clear and definitive evidence that relates to Plaintiff's severe impairment that was before the ALJ at the time of the hearing. Dr. Phillips' belated reading of the "winter x-ray" is consistent with and provides an objective basis for Plaintiff's prior complaints of pain, swelling, stiffness, and difficulty walking. More importantly, it offers interim evidence of the degree of severity of Plaintiff's foot/ankle condition that was before the ALJ. Though these records relate to evidence that was created after the ALJ's Decision, they are still relevant to the time period before the ALJ because Dr. Phillips' record evidence already demonstrated objective findings of swelling, weakness, stiffness, decreased range of motion, and pain upon examination. The x-ray and subsequent findings by Dr. Phillips are consistent with the functional limitations he assigned. Had the ALJ had this new evidence, she likely would have made a different RFC determination, finding a more significant limitation related to her abilities to stand, walk, and sustain an eight-hour workday. For these reasons, the Court finds that both of these documents, as well as all subsequent records from Dr. Phillips are

new and that good cause exists as to why this evidence was not presented, as these records were generated as part of continued medical care and not merely to rebut an unfavorable disability ruling. See *Koulizos v. Sec'y of HHS*, 802 F.2d 458 (6th Cir. 1986).

The issue of <u>materiality</u> comes down to whether there is a reasonable probability that had the ALJ considered the continuing treatment records from Dr. Phillips she would have reached a different conclusion. See *Hollon*, 447 F.3d at 484. The continued treatment records of Dr. Phillips show continued bony and soft tissue swelling of both ankles with reduced range of motion; continued steroid injections into her ankle joints; referral to an orthopedic surgeon at the University of Kentucky; referral to podiatric specialist Dr. Chad Bassi for sequential surgical fusions of her ankles. The Court finds that the evidence of ongoing ankle/feet problems to the point of referral for bilateral surgical fusions is sufficient to support a finding of materiality. These records show that conservative treatment for Plaintiff's RA impairment was no longer working. The Court finds that there is a reasonable probability that the ALJ would have reached a different conclusion had she been presented with this new evidence, and Sentence Six remand is therefore appropriate.

**2. Treatment records/diagnostic studies from podiatric specialist/surgeon Dr. Chad Bassi**. The evidence contained in the treatment records/diagnostic studies from podiatric specialist/surgeon Dr. Bassi includes treatment records/office notes/diagnostic studies from August 15 to November 16, 2023. Following the initial visit with Dr. Bassi, a CT of Plaintiff's left ankle was ordered and compared to an August 15, 2023, x-ray. The September 1, 2023, CT Report, [DN 7] at 88-89, includes extensive description of the condition of Plaintiff's left ankle with findings including: widening of some joints and narrowing of others; spurring/narrowing/tilting of bones; large, coarse calcifications; planus deformity; degenerative spurring; erosions in surfaces; subchondral cysts; loss of normal fat tissue in areas; synovial thickening; chronic inflammation

with pannus formation; 13 x 17 mm ganglion cyst; and notation of at least two "loose body" fragments within the ankle joint (8 mm and 5 mm in size). Dr. Bassi's September 19, 2023, office notes include the September 1, 2023, CT Report and a comprehensive lower extremity examination and evaluation. Dr. Bassi makes diagnoses of "1. Deformity, foot acquired, left (Primary) 2) Rheumatoid arthritis involving both ankles with negative rheumatoid factor 3) Pes planus of both feet 4) Chronic pain of both ankles." [DN 7] at 100. Dr. Bassi further indicates that he believes "the best course of action would be to proceed with a left tibiotalocalcaneal fusion, talonavicular joint fusion, gastric recession versus tendo Achilles lengthening, bone graft harvest." *Id*.

The Dr. Bassi records from August 15 to November 16, 2023, are <u>new evidence</u> because they post-date the December 20, 2022, hearing before ALJ Eaton. Similarly, <u>good cause exists</u> as to why this evidence was not presented, because these records were generated as part of Plaintiff's continued medical care (following referral to Dr. Bassi by her treating rheumatologist, Dr. Phillips) for her bilateral ankle/foot problems. These records are generated from a treatment relationship as part of continued medical care and not merely to rebut an unfavorable disability ruling. These <u>records are material</u> as there is a reasonable probability that had they been available to the ALJ for consideration, she would have reached a different conclusion. Dr. Bassi's records establish the progressive worsening of Plaintiff's rheumatoid arthritis which ultimately required surgical ankle fusion. This outcome was anticipated as early as July 2018[11] by Dr. Phillips (in treatment records that were before the ALJ). Had the ALJ been presented with this new evidence, there is a high likelihood that she would have reached a different conclusion in Plaintiff's case. Accordingly, Sentence Six remand is warranted on the basis of this new evidence.

---

[11] Dr. Phillips July 24, 2018, medical record, "RA active in ankles. Might need surg intervention." [DN 7] at 1659.

**3. Baptist Health hospital surgical records of partial mastectomy in March of 2023 and left ankle fusion in October of 2023**. The Baptist Health hospital surgical records are a large portion of the new evidence submitted by Plaintiff while review was pending at the Appeals Council. The ALJ's unfavorable Decision was rendered in Plaintiff's case on March 15, 2023, and on March 16, 2023, Plaintiff underwent a partial mastectomy with sentinel node biopsy. On October 18, 2023, Dr. Bassi surgically fused bones in Plaintiff's left ankle. All of these Baptist Health hospital surgical records constitute <u>new evidence</u> as they post-date her December 20, 2022, administrative hearing. <u>Good cause exists</u> as to why this evidence was not presented, because these records were generated as part of continued medical care and not merely to rebut an unfavorable disability ruling. These <u>records are material</u> as there is a reasonable probability that had the ALJ considered them, she would have reached a different conclusion.

The Baptist Health records recount two surgeries and the accompanying diagnostic reports/vital signs and other records generated during Plaintiff's hospital stays. Of particular import are the findings of Dr. Bassi regarding the condition of Plaintiff's left ankle when he completed the fusion surgery. The operative notes indicate what he found upon incision: "There was significant osteophyte formation as well as cartilage loss of both the joints. The bone had an inflamed and osteopenic appearance consistent with rheumatoid arthritis…Again there was moderate cartilage loss within the subtalar joint." [DN 7] at 620. The evidence of the need for such an extensive surgical intervention coupled with the multiple degenerative findings on CT and its consistency with what Dr. Bassi found during the operation are all facts which support a different conclusion had the ALJ had these facts before her. Plaintiff was unable to afford the necessary, corrective surgery until she was approved by Medicaid.[12]

---

[12] The Plaintiff's uninsured status and difficulty affording care until she was approved for Medicaid offers an additional layer of good cause to her specific factual scenario. It offers good cause for why she did not cause the

This new evidence is suggestive of a much more serious rheumatoid arthritic condition and resulting limitations from Plaintiff's ankles than the ALJ addressed. Given the degenerative nature of rheumatoid arthritis and the state of Plaintiff's left ankle/foot as found in Dr. Bassi's surgery a mere seven months after the unfavorable Decision in her case, it is likely that the ALJ would have reached a different conclusion (or at least discussed by name the degenerative rheumatoid arthritic condition in Plaintiff's ankles) had she been presented with this evidence. The fact that Plaintiff underwent a left ankle fusion seven months after the Decision relates back to the relevant time period, as the operation was recommended and performed to treat Plaintiff's severe RA condition that was present during the relevant time period. There is a reasonable probability that an ALJ would reach a different conclusion if presented with these records, given this specific fact scenario. Accordingly, the Baptist Health hospital records are new, there was good cause for not presenting them at the administrative level, and they contain material information which warrants a Sentence Six remand of this case to the Commissioner.

## III.  CONCLUSION

Based on the foregoing, the Court finds that a Sentence Six remand requiring the ALJ to consider all of the new evidence from Dr. Phillips, Dr. Bassi, and Baptist Health is proper, as the evidence is new and material, and good cause exists for Plaintiff's failure to incorporate it into the record in an earlier administrative proceeding. Accordingly,

---

evidence to be created and produced until after the administrative hearing. The complete lack of insurance in this case (and its timing relative to the administrative hearing) was an impediment to Plaintiff's ability to procure treatment and cause this new evidence to be created prior to the administrative proceeding.

IT IS ORDERED that this case is REMANDED pursuant to Sentence Six of 42 U.S.C. § 405(g) for further administrative proceedings and consideration of all the new and material evidence.

IT IS FURTHER ORDERED that this case is ADMINISTRATIVELY CLOSED, and subject to reopening upon motion by one or both of the parties.

September 30, 2025

**Lanny King, Magistrate Judge**
**United States District Court**